T.C. Memo. 2014-69

UNITED STATES TAX COURT

RODNEY HARRIS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22733-12.                    Filed April 16, 2014.

        R determined income tax deficiencies and accuracy-related
penalties, the latter of which R conceded before the trial, for P's 2010
and 2011 tax years.  With respect to 2010, R determined that P is not
entitled to head of household filing status or the exemption for a
qualifying child, credit for child and dependent care expenses, child
tax credit, or earned income credit for P's minor child, K.H.  With
respect to 2011, R determined that P is not entitled to the exemption
for a qualifying child, child tax credit, earned income credit, or
American opportunity credit for K.H.  R reached these determinations
because the conciliation agreement between P and K.H.'s mother did
not allocate the exemption for K.H. but indicates that K.H's mother
should have custody of K.H. for the greater part of the year.  In
furtherance of his position, R also relied on K.H.'s school records,
which suggest that K.H. resides with his mother close to K.H.'s
school.  At trial credible testimony demonstrated that P, although
never married to K.H.'s mother, played an instrumental role in K.H.'s
active lifestyle in 2010 and 2011 and that the terms of the conciliation
agreement were not followed in those years.  Further, it was

[*2] determined that neither K.H. nor his mother actually resided regularly at the address listed in the school records.

Held: P is entitled to dependency exemption deductions for his qualifying child, K.H., for 2010 and 2011.

Held, further, P is entitled to the credit for child and dependent care expenses, child tax credit, and earned income credit for K.H. for 2010.

Held, further, P is entitled to the child tax credit and earned income credit for K.H. for 2011.

Rodney Harris, pro se.

Whitney N. Moore, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge: The case is before the Court on a petition for redetermination of the income tax deficiencies and accuracy-related penalties respondent determined for both the 2010 and 2011 tax years. After disallowing the exemption for a qualifying child, credit for child and dependent care expenses, child tax credit, earned income credit, and head of household filing status,[1]

_____

[1]While petitioner elected single filing status, rather than head of household, on both his 2010 and 2011 Forms 1040A, U.S. Individual Income Tax Return, the Form 866-A, Explanation of Items, for 2010 states that respondent is disallowing

(continued...)

[*3] respondent determined a deficiency of $2,848 in the 2010 Federal income tax of petitioner Rodney Harris and an accuracy-related penalty of $1,447 pursuant to section 6662.[2] After disallowing the exemption for a qualifying child, child tax credit, earned income credit, and American opportunity credit, respondent determined a deficiency of $5,325 in the 2011 Federal income tax of petitioner and an accuracy-related penalty of $1,065 pursuant to section 6662. After concessions by the parties on penalties,[3] the issue for decision is whether petitioner is entitled to dependency exemption deductions for his minor child, K.H.,[4] for the 2010 and 2011 tax years. As eligibility for the credit for child and dependent care expenses, child tax credit, and earned income credit is contingent upon whether petitioner is entitled to dependency exemption deductions for K.H., those issues are merely

---

[1](...continued)
the head of household filing status. Petitioner has not asserted head of household filing status in this proceeding.

[2]All section references are to the Internal Revenue Code of 1986, as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[3]Respondent determined accuracy-related penalties for 2010 and 2011 but conceded the penalty issue in full before trial.

[4]It is the policy of this Court not to identify minors. We refer to petitioner's minor child by his initials. See Rule 27(a)(3).

**[*4]** computational.  Petitioner is not eligible for the American opportunity credit despite our holding today.[5]

A trial was held on December 17, 2013, in Los Angeles, California.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulations, with the accompanying exhibits, are incorporated herein by this reference.  Petitioner resided in California when his timely petition was filed.

Petitioner is the biological father of K.H.  The child's biological mother, Alvanisha McFall, and petitioner never married and lived separately during the tax years at issue.  Both Ms. McFall and petitioner claimed dependency exemption deductions for K.H.  Effectively, each parent took the position that he or she was the custodial parent, and neither parent yielded the right to claim the dependency exemption deductions to the other.

---

[5]The American opportunity credit was available, for taxable years 2010 and 2011, to taxpayers who paid qualified tuition and related expenses for education furnished to eligible students.  See sec. 25A(f), (i).  Eligible students should, in addition to other requirements, have been enrolled at an eligible educational institution in a program leading toward a postsecondary degree, certificate, or other recognized postsecondary educational credential.  See sec. 1.25A-3(d), Income Tax Regs.  As this was not the case for K.H., petitioner is not eligible for the American opportunity credit.

**[*5]** In 2003 when K.H. was two years old a conciliation court agreement and stipulated order (conciliation agreement) was filed in the Superior Court of California, County of Los Angeles, whereby Ms. McFall and petitioner agreed to share joint legal custody of K.H. The conciliation agreement does not award the dependency exemption to either parent. The conciliation agreement does set out detailed guidelines as to how K.H.'s time should be split between the parents throughout the year. For example, it specifies that K.H. shall be in petitioner's care on the first, third, and fifth weekends of every month from 7 p.m. Friday until 8 p.m. Sunday and that Ms. McFall shall have the care and responsibility of K.H. during all other times. Moreover, the conciliation agreement describes, in detail, how K.H.'s time should be spent during holidays and school vacation.

As of 2010 and 2011 more than seven years had passed since the conciliation agreement allocating parental responsibilities was filed. K.H. was 9 and 10 years old in years 2010 and 2011, respectively, and had grown to make his family proud as a budding athlete, playing both football and basketball. K.H. earned trophies for his efforts and was awarded the Most Valuable Player award for his participation on the football team.

Achieving such success clearly required a high level of investment from both K.H. and his family. Football season typically lasted from August through

[*6] November, and basketball season was from January through March. During these months K.H. had a rigorous daily schedule which usually involved a full day of school from 7:45 a.m. through 2:15 p.m., followed by his participation in an after-school program called L.A.'s Best, which started immediately after classes ended and ran through 5:30 p.m. or 6 p.m. K.H. would then have to change from his school clothes to his football or basketball uniform so that he would be ready for football or basketball practice, which typically lasted from 6 p.m. or 6:30 p.m. to 8 p.m. or 8:30 p.m.

Football and basketball practice would take place several days a week, generally Tuesdays through Thursdays, and full games were usually played on Saturdays. Football and basketball practice would take place at a park, which was a five-to-seven-minute drive from school. Saturday football games would often be "away games" relatively far from the park. There would be some "away games" for basketball as well. K.H.'s athletic success and active lifestyle would not have been possible without the care and commitment of his family.

From a logistical standpoint, it is unlikely that Ms. McFall, alone, could have managed K.H.'s highly mobile daily activities, particularly during football and basketball seasons. Ms. McFall did not own a car or have a driver's license in

**[\*7]** 2010 and 2011 and traveled primarily by bus.  But Ms. McFall's mother would drive her once in a while.

While Ms. McFall was unemployed in 2010 and 2011, no testimony or other evidence was offered demonstrating that Ms. McFall spent her free time traveling with K.H. from activity to activity, and respondent did not call Ms. McFall as a witness.  Moreover, while school records suggest that K.H. resides with Ms. McFall just a short distance from K.H.'s school, the address listed was determined at trial to be the residence of K.H.'s half-brother's grandmother.  Ms. McFall, although never married, has another son by another man.  It is that son's father's mother's address which was used on the school records.  Neither Ms. McFall nor K.H. actually resides at the address listed in the school records.  While Ms. McFall's actual address on West Boulevard could not be determined at trial, testimony indicated that Ms. McFall did not live within walking distance of K.H.'s school.  Testimony suggested that K.H. slept at Ms. McFall's house up to three nights in a typical week during football and basketball seasons.

Petitioner, who also played football and basketball growing up, provided credible corroborated testimony at trial demonstrating his significant role in K.H.'s upbringing and lifestyle, particularly during 2010 and 2011.  Petitioner had a certain affinity for the L.A. Demos, K.H.'s football team, because petitioner had

**[*8]** played for the same team starting when he was seven years old. Petitioner was also very involved in K.H.'s basketball team, he was a former high school basketball player, and he served as a coach on K.H.'s basketball team in March 2010.

Petitioner, along with his mother, Valanda Harville, and great aunt, Desilisa Mitchell, also testified to petitioner's involvement in K.H.'s daily routine. Petitioner owned a car during 2010 and 2011 and spent quite a bit of time tending to his son outside his Monday through Friday, 8 a.m. to 5 p.m., work schedule. As Ms. Mitchell lives approximately one block from the place where K.H.'s football practice takes place and also lives near his basketball practice location, K.H. would generally change from his school clothes to his football or basketball clothes at her house whenever he practiced. Since petitioner's official residence is Ms. Harville's house, which is approximately 65 miles from K.H.'s school, as well as approximately 60 miles from where football and basketball practice takes place, petitioner would often stay over with K.H. at Ms. Mitchell's house, particularly on days that K.H. had practice. Petitioner and K.H. would also stay at Ms. Mitchell's house over the weekend, particularly when K.H. had a game and petitioner felt too tired to make the long trip back to his home at Ms. Harville's house. When petitioner and K.H. would stay at Ms. Harville's house, they each enjoyed the

[*9] comfort of their own bedrooms. Sometimes petitioner would take K.H. to Ms. McFall's home after practice.

In order to accommodate petitioner's work schedule, following the nights petitioner and K.H. stayed at Ms. Harville's house, they would leave the house together around 6 a.m. the next day to ensure that petitioner could drive K.H. to school on time and that petitioner would get to work on time. The commute the next morning would be much more manageable following the nights petitioner and K.H. stayed at Ms. Mitchell's house. After work, petitioner would pick K.H. up from school at approximately 5:45 p.m. and take him to Ms. Mitchell's house to change and then would take him to football or basketball practice. After practice concluded around 8 p.m. or 8:30 p.m., petitioner would again decide whether to take K.H. to Ms. McFall's house, drive out to Ms. Harville's house, or stay over at Ms. Mitchell's house.

Aside from his role in K.H.'s athletics, petitioner also spent summer vacations, spring break, and Christmas break with K.H. Moreover, petitioner and K.H. attended church with Ms. Mitchell on Sundays, and K.H. also sang in the church choir and worked as an usher. Ms. McFall attended a different church in 2010 and 2011. Petitioner would typically take K.H. back to Ms. McFall's house after church on Sundays. In 2010, when Ms. McFall's house caught fire and

**[*10]** partially burned, petitioner and K.H. stayed at Ms. Mitchell's house for most of a two-month repair period so that petitioner could take K.H. to school every day while Ms. McFall managed repairs to the house.

Notwithstanding the terms of the conciliation agreement, the evidence at trial clearly indicated that petitioner and Ms. McFall did not follow the terms of the conciliation agreement in 2010 and 2011. Petitioner's active involvement in K.H.'s life, particularly during football and basketball seasons, was not contemplated by the conciliation agreement entered into when K.H. was age two. Petitioner and Ms. McFall primarily followed the conciliation agreement with respect to the weekends. Petitioner and Ms. McFall never returned to the superior court in order to modify the terms of the conciliation agreement because they usually resolved parental custody issues amicably between themselves.

## OPINION

As a general rule, the Commissioner's determination of a taxpayer's liability is presumed correct, and the taxpayer bears the burden of proving that the determination is improper. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any claimed deductions. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This includes the burden of

[*11] substantiation.  Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976).  Although section 7491 may shift the burden of proof in specified circumstances, petitioner has not established that he meets the prerequisites under section 7491(a)(1) and (2) for such a shift.

Section 151(c) generally allows an exemption for each dependent who is a child of the taxpayer, subject to age limitations not in issue here.  See sec. 152(c).  In general, section 152(a) defines "dependent" to include the taxpayer's son or daughter who did not provide over half of his or her own support and who has the same principal place of abode as the taxpayer for more than one-half of the calendar year.  See sec. 152(c).  If the parents claiming any qualifying child do not file a joint return, that child shall be treated as the qualifying child of the parent with whom the child resided for the longer period of time during the taxable year (i.e., the custodial parent).  See sec. 152(c)(4)(B).

Under section 1.152-4(d)(1), Income Tax Regs., the custodial parent is the parent with whom the child resides for the greater number of nights during the calendar year, and the noncustodial parent is the parent who is not the custodial parent.  A child is treated as residing with a parent for a night if (1) the child sleeps at the residence of that parent or (2) if the child sleeps in the company of

[*12] the parent, when the child does not sleep at a parent's residence. Sec. 1.152-4(d)(1)(i) and (ii), Income Tax Regs.

However, the noncustodial parent may claim the dependency exemption deduction if the custodial parent executes a written declaration releasing the custodial parent's claim to the deduction and the noncustodial parent attaches that written declaration to the noncustodial parent's return for that taxable year. Sec. 152(e)(2); Barrett v. Commissioner, T.C. Memo. 2008-284.

Petitioner and Ms. McFall both claim to have been K.H.'s custodial parent in 2010 and 2011, and both claimed dependency exemption deductions on their tax returns on that basis. K.H. can be a qualifying child of only one of them. Petitioner does not claim that he is entitled to the dependency exemption deduction on the basis of a written declaration under section 152(e)(2). Thus, we must determine with whom K.H. resided for the longer period of time during each of the taxable years 2010 and 2011. See sec. 152(c)(4)(B)(i).

The conciliation agreement suggests, by its terms, that Ms. McFall should be treated as the custodial parent as K.H. is to spend the greater part of the calendar year with her. However, the testimony presented at trial has convinced this Court that the conciliation agreement did not reflect the time K.H. spent with each of his parents in 2010 and 2011. Nor does the conciliation agreement reflect

**[*13]** where, and in which parent's company, K.H. likely sleeps at night. On the basis of the testimony provided, petitioner played an instrumental role in K.H.'s life in the years at issue. Given petitioner's involvement in K.H.'s active lifestyle, particularly during football and basketball seasons, we find that K.H. slept either at petitioner's residence or in the company of petitioner at petitioner's great aunt's house a greater number of nights during the 2010 and 2011 years than K.H. slept at Ms. McFall's residence or in her company.

Consequently, this Court concludes that petitioner was K.H.'s custodial parent in 2010 and 2011 and that K.H. is the qualifying child of petitioner, who is therefore entitled to the dependency exemption deduction for those years.

The Court has considered all of respondent's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.